UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARIO WILSON,

                        Plaintiff,

      v.

GARY WAKEMAN,

                       Defendant.

CASE NO. 3:23-cv-05931-JHC-GJL

REPORT AND RECOMMENDATION

Noting Date: March 18, 2025

## I.    INTRODUCTION

This matter is before the Court on referral from the District Court. Plaintiff Mario Wilson is a former prisoner at the Stafford Creek Corrections Center ("SCCC"), a prison operated by the Washington State Department of Corrections ("DOC"). Plaintiff is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action against the former SCCC Chaplain, Gary Wakeman. In the Complaint, Plaintiff alleges that Defendant violated his rights under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by delaying access to his religious headwear, a Kufi, upon his arrival at SCCC. Dkt. 8.

Presently before the Court are the parties' Cross-Motions for Summary Judgment. Dkts. 25, 26. After reviewing the Motions and relevant record, the Court concludes Plaintiff has established that Defendant's delay in issuing the Kufi imposed a substantial burden on the exercise of Plaintiff's religious beliefs. Even so, the Court further finds Defendant's actions were rationally related to legitimate penological interests with respect to Plaintiff's First Amendment claim. As to Plaintiff's RLUIPA claim, the Court finds Defendant's actions related to DOC policies were taken in furtherance of a compelling government interest with no lesser restrictive means. The Court also concludes the undisputed evidence does not support Plaintiff's related retaliation claim. Finally, the Court holds Defendant is entitled to qualified immunity. Accordingly, the Court recommends Defendant's Motion for Summary Judgment (Dkt. 26) be **GRANTED** and Plaintiff's Motion for Summary Judgment (Dkt. 25) be **DENIED**.

## II.    BACKGROUND

### A.    Procedural History

On November 3, 2023, Plaintiff filed a Complaint alleging that Defendant's actions while Plaintiff was incarcerated at SCCC amounted to unconstitutional conduct.[1] Dkt. 8. Specifically, Plaintiff brings this suit under 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc, *et seq*., alleging that Defendant, SCCC's former Chaplain, violated Plaintiff's First Amendment rights and RLUIPA when he did not immediately issue Plaintiff's religious headwear, a Kufi, upon Plaintiff's arrival at SCCC in 2021. *Id*. at 2–4. In addition, Plaintiff alleges that Defendant retaliated against him for repeatedly stating that his rights were being violated. *Id*. at 5. Plaintiff seeks declaratory relief as well as compensatory and punitive damages. *Id*. at 7.

---

[1] Plaintiff was released from incarceration in December 2023. *See* Dkt. 23 at 1.

1    Plaintiff filed a Motion for Summary Judgment on December 9, 2024. Dkt. 25. In support

2    of his Motion, Plaintiff attached several exhibits. *Id*. at 5–11. Defendant followed with a Cross-

3    Motion for Summary Judgment on December 16, 2024. Dkt. 26. In support of his Motion,

4    Defendant filed a declaration of Defendant, as well as a declaration of Carol Smith, the

5    Department of Corrections' ("DOC") statewide Resolution Program Manager. Dkts. 27, 28.

6    Defendant also electronically filed his Notice to Plaintiff of a Dispositive Motion filed with the

7    Clerk ("*Rand* Notice"). Dkt. 29. The parties have responded and replied to the Cross-Motions

8    and, thus, the Motions are ripe for consideration.[2] Dkts. 31, 38–40.

9    **B.    Factual Background**

10    The Court begins by summarizing the facts of this case from the parties' pleadings,

11    summary judgment briefing, and the evidence submitted in support thereof. The facts are

12    undisputed except as noted.

13    DOC Policy 560.200, Religious Programs, is the principal policy concerning inmates'

14    religious practices and programs. Dkt. 28 ¶ 3, Wakeman Dec.; Dkt. 28-1, Ex. 1 (DOC Policy

15    560.200). As set forth in Policy 560.200, the DOC recognizes the importance of supporting the

16    religious faith practices of its incarcerated population. Dkt. 28 ¶ 3; Dkt. 28-1 at 3. The DOC

17    allows for religious services and acknowledges the rights of incarcerated individuals to believe,

18    express, and exercise the religion of their choice, provided it does not present a threat to facility

19    safety or security. Dkt. 28 ¶ 3; Dkt. 28-1 at 3. Individuals wishing to participate in religious

20

---

21    [2] In his Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, Defendant argues Plaintiff's
Response is untimely, as it was not filed in accordance with Local Rule 7(d)(4). *See* Dkt. 39 at 2–3. In his Sur-

22    Reply, Plaintiff argues that by virtue of the prison mailbox rule, his Response was timely. As Plaintiff was
incarcerated at the time he filed the Response, he does receive the benefit of the prison mailbox rule. *See Douglas v.*

23    *Noelle*, 567 F.3d 1103, 1106 (9th Cir. 2009) (citing *Houston v. Lack*, 487 U.S. 266 (1988)). Additionally, because
this Court recommends that Plaintiff's claims be dismissed, the Court declines to strike Plaintiff's Response to

24    Defendant's Motion.

programs may possess DOC-approved religious items; however, such items will be stored in an approved religious items box when not in use, with the exception of oversized items. Dkt. 28 ¶ 4; Dkt. 28-1 at 13; Dkt. 28-1 at 26, Ex. 2 (DOC Policy 440.000). As to religious head coverings, DOC Policy 560.200 states that, "[w]ith the exception of bandanas and fezzes, religious head coverings may be worn at any time unless otherwise restricted for safety concerns (e.g., while working with machinery)." Dkt. 25 at 10, Ex. C (DOC Policy 560.200).

In addition, DOC Policy 440.000 governs the allowance for incarcerated individuals to possess personal property. Dkt. 28 ¶ 5; Dkt. 28-1, Ex. 2. Personal property must be acquired from the DOC's authorized sources and its retention must follow DOC guidelines. Dkt. 28 ¶ 5; Dkt. 28-1 at 22. The property must also comply with the Maximum Allowable Personal Property Matrix ("Matrix")[3] Dkt. 28 ¶ 5; Dkt. 28-1 at 22. If any property in the individual's possession is not listed on their Matrix, it will be considered unauthorized and contraband, and will be disposed of per DOC Policy 400.000. Dkt. 28 ¶ 5; Dkt. 28-1 at 23. Specifically, the incarcerated individual will have 90 days to dispose of the unauthorized property using the DOC Property Disposition Form, DOC Form 21-139, which allows for the individual to mail the unauthorized items out of the facility to a designated individual. Dkt. 28 ¶ 5; Dkt. 28-1 at 27.

Plaintiff was transferred to SCCC on May 7, 2021. Dkt. 28 ¶ 6. At the time of his arrival, Plaintiff had his religious headwear, the Kufi, but, according to Plaintiff, SCCC property officers confiscated it. *Id*.; Dkt. 8 ¶ 4. On May 17, 2021, Plaintiff sent Defendant a Kiosk message regarding his Kufi, stating, "I came on tha [sic] chain with my Kufi. How long is it going to take before I get it?" Dkt. 28 ¶ 7; Dkt. 28-1 at 33, Ex. 3 (SCCC Kiosk Messages & DOC Responses).

---

[3] The Maximum Allowable Personal Property Matrix, found in an Attachment to DOC Policy 440.000, "identifies the type, value, and amount of personal property authorized for offender retention at the different housing security levels." *See* Dkt. 28-1 at 22; 31–31, Ex. 2.

Plaintiff sent Defendant another message on May 20, 2021, stating, "I've been here going on three weeks now. I'm wondering how long is it going to be until I get my Kufi that I came on tha [sic] chain with and my religious items box that was brought with me in tha [sic] truck. I came with all my boxes straight from OCC to here." Dkt. 28 ¶ 7; Dkt. 28-1 at 34. Defendant responded to Plaintiff on May 24, 2021, stating, "Watch for the callout." Dkt. 28 ¶ 8; Dkt. 28-1 at 34–35. In his Declaration, Defendant asserts this message for Plaintiff meant that, upon his receipt of the Kufi, Defendant would place Plaintiff on callout to retrieve it. Dkt. 28 ¶ 8.

On May 27 and 29, 2021, Plaintiff sent Kiosk messages to the SCCC Property Unit, inquiring about his "other" property boxes. Dkt. 28 ¶ 9; Dkt. 28-1 at 35. Also, on May 29, 2021, Plaintiff sent Defendant a message, asking, "How long is it going to be before you put me on the callout for my religious items box?" Dkt. 28 ¶ 10; Dkt. 28-1 at 35. Plaintiff sent Defendant another message on June 3, 2021, stating, "I've been here going on a month or long [sic], I'd like to know how much longer is it going to be until you put me on the callout for my Kufi I came here with?????" Dkt. 28 ¶ 10; Dkt. 28-1 at 36. Defendant responded on that same day, stating, "I don't have anything for you . . . If I do get something then you will be placed on a callout." Dkt. 28 ¶ 10; Dkt. 28-1 at 36.

Also on June 3, 2021, the Property Unit responded to Plaintiff, asking, "Did you receive any property whatsoever?" Dkt. 28-1 at 36. Plaintiff responded on June 4, 2021, stating, "I was brought here in tha [sic] transport van straight from OCC an[d] I had my Kufi in my chain bag. When I got here, Property took my Kufi an[d] said that it would be given to tha [sic] Chaplain. I just received a message from tha [sic] Chaplain an[d] he said he doesn't have it." Dkt. 28 ¶ 11; Dkt. 28-1 at 36. The Property Unit replied on June 7, 2021, stating, "You need to show proof that you own a religious items box to be approved to have the Kufi." Dkt. 28 ¶ 12; Dkt. 28-1 at 37.

Plaintiff responded to the Unit on the same day, asserting, "Religious property has nothing to do with regular property so you need to send my religious property to tha [sic] Chaplain, because as of now you are violating DOC Policy 560.200 an[d] my constitutional rights under the RLUIPA." Dkt. 28 ¶ 12; Dkt. 28-1 at 37. Also on June 7, 2021, Plaintiff sent Defendant a message, stating, "Property sent me a message stating that they have my Kufi, which I already knew because I arrived with it, but they [are] refusing to give to you whereas anything religious related is not their concern. I let them kno[w], they are violating 560.200, and RLUIPA." Dkt. 28 ¶ 12; Dkt. 28-1 at 37.

On June 8, 2021, Defendant responded to Plaintiff's June 7, 2021, message, stating, "So in order to have religious items you need a religious items box first. You do not have one on your matrix, in order for me to get your Kufi to issue to you, you will need to order a religious items box off of store. Let property know when you get one and then they can give me your Kufi." Dkt. 28 ¶ 13; Dkt. 28-1 at 38. Plaintiff responded on the same day, stating, "Why would I order a religious items box when I have one on my matrix already? Maybe you need to double check because I purchased one when I was here at SCCC in 2019." Dkt. 28 ¶ 13; Dkt. 28-1 at 38. Defendant responded, "Property is saying that you do not have one. Message them." Dkt. 28 ¶ 13; Dkt. 28-1 at 38. Plaintiff replied stating that Defendant and the Property Unit were depriving him of his religious property and had violated his rights and DOC Policy 560.100 and 560.200. Dkt. 28 ¶ 13; Dkt. 28-1 at 38. Defendant responded to Plaintiff again, stating, "DOC Policy 560.200 requires you to have a religious items box to store religious items in. If you have the box with a receipt just provide it to Property if you do not order one. It's that simple." Dkt. 28 ¶ 13; Dkt. 28-1 at 39.

Plaintiff sent two messages to Defendant on June 8, 2021, in response to Defendant's last message. First, Plaintiff asked Defendant, "It's a religious matter, so why would I keep sending them messages. At the moment you're not attending to my spiritual needs. You have access to look at my matrix. Per Policy 560.100 and 560.200 you are to handle religious matters." Dkt. 28 ¶ 14; Dkt. 28-1 at 39. His other message stated, in part, "Religious property has nothing to do with regular property." Dkt. 28-1 at 39. Defendant replied, "Your spiritual need of a Kufi requires you to have a religious items box. If you do not then that would be on you." Dkt. 28-1 at 39. Plaintiff responded, "I have an items box, which has nothing to do with me practicing my religion, whereas you not going to get my religious item does. Your refusal to do so is preventing me from getting my religious property, which in turn, prevents me from picking it up." Dkt. 28-1 at 39.

Also on June 8, 2021, Plaintiff sent Commissary a message, stating, "I ordered a religious items box around Oct-Nov of 2018 when I arrived at [SCCC]. Are you able to give me tha [sic] ordering # and date for that purchase please?" Dkt. 28-1 at 40. Commissary responded, "You will need to contact public records for that information." *Id.*

On June 8, 2021, Defendant responded to Plaintiff's message indicating he has an items box, stating, "So you have one, that's great. You will be on callout and I just need you to bring it with you along with your [receipt] and we will get this taken care of." Dkt. 28 ¶ 14; Dkt. 28-1 at 41. Plaintiff replied, "You can see on my religious file when I received it, an[d] you'll see that I got my items box while I was here 2018-2019." Dkt. 28 ¶ 14; Dkt. 28-1 a 41. Defendant responded, "Y[e]a no problem you will be on callout for tomorrow at 2:30 in the property room, just bring your box and receipt and we can get it all taken care of." Dkt. 28 ¶ 14; Dkt. 28-1 at 42.

In his Declaration, Defendant gives an account of his understanding of a Kufi as a religious item at the time he responded to Plaintiff on June 8, 2021. Defendant asserts,

> At this time, it was my understanding that an individual must have a religious items box to be issued a Kufi. Therefore, on June 9, 2021, when I met with Wilson and he did not have a religious items box, I informed him I would need to conduct a disposition on the Kufi and he would be allowed to send it out. However, after conferring with DOC Headquarters I was informed a Kufi does not require a religious items box. I then placed Wilson on callout to issue his Kufi.

Dkt. 28 ¶ 15.

Later on June 9, 2021, Plaintiff sent Defendant a message, asking, "Can you sign me up for tha [sic] open chapel religious programs for Fridays 12-230?" Dkt. 28-1 at 42. Defendant responded to Plaintiff on June 11, 2021, "added." *Id.*

On June 11, 2021, Plaintiff sent several Kiosk messages to SCCC and other DOC officials regarding his Kufi. In these messages, Plaintiff informed the officials that he had arrived at SCCC with his Kufi but Defendant was still refusing to issue it to him, that he had informed Defendant he was violating federal law and DOC policies, and that Defendant was threatening to dispose of Plaintiff's Kufi in retaliation for Plaintiff using his "free speach [sic]". Dkt. 28-1 at 43–45.

On June 14, 2021, the SCCC Superintendent sent Plaintiff a message, stating, "Chaplain received clarification on your issue and will be issuing you your Kufi this week." Dkt. 28 ¶ 16; Dkt. 28-1 at 46. The Superintendent sent Plaintiff another message that day letting Plaintiff know that he would be issued his Kufi "sometime this week." Dkt. 28-1 at 47.

On June 16, 2021, Plaintiff sent Defendant a message, asking, "I'd like to know when you're going to put me on tha [sic] callout for my Kufi? I received a message stating it would be this week?" Dkt. 28 ¶ 17; Dkt. 28-1 at 48. Defendant responded to Plaintiff with, "Thursday." Dkt. 28 ¶ 17; Dkt. 28-1 at 49.

On June 17, 2021, Plaintiff was issued his Kufi and other religious property that had arrived at SCCC that week. Dkt. 28 ¶ 18.

On both July 1st and 22nd of 2021, Plaintiff filed complaints against Defendant through the DOC's Resolution Program. Dkt. 27 ¶ 6, Smith Dec.; Dkt. 27-1 at 2, 4 (DOC Resolution Requests & Responses). The matter was investigated by a DOC Resolution Specialist and reviewed by the SCCC Superintendent. Dkt. 27-1 at 9–15. After investigation, it was determined that Defendant's actions were in accordance with DOC policies, that he requested and received clarification from DOC Headquarters on his understanding of DOC policies with respect to religious headwear, that Defendant's actions were without malice, and that Plaintiff ultimately received his Kufi after everything was clarified. *Id*. Plaintiff sought further review, and DOC Headquarters affirmed the Resolution Specialist's findings. *Id*. at 14–15.

### III.    LEGAL STANDARDS

**A.    Summary judgment**

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by presenting evidence that negates an essential element of the nonmoving party's case, or by

1   establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at

2   trial. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.

3   2000). Where the moving party bears the burden at trial, it can meet its initial burden by

4   presenting evidence sufficient to demonstrate that no reasonable trier of fact could find for the

5   nonmoving party; the evidence presented must establish beyond controversy every essential

6   element of the claim. *Southern Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888–89 (9th

7   Cir. 2003).

8        If the moving party meets its initial responsibility, the burden then shifts to the

9   nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus.*

10  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Genuine disputes are those for which

11  the evidence is such that a "reasonable jury could return a verdict for the nonmoving party."

12  *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit

13  under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute.

14  *Id.* at 252. Likewise, the nonmoving party cannot "defeat summary judgment with allegations in

15  the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v.*

16  *Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

17       Allegations based merely on the plaintiff's belief are insufficient to oppose summary

18  judgment, as are unsupported conjecture and conclusory statements. *Id.*; *McElyea v. Babbitt*, 833

19  F.2d 196, 197–98 n.1 (9th Cir. 1987). In ruling on a motion for summary judgment, the Court

20  must draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus.*

21  *Co.*, 475 U.S. at 587, and may not weigh the evidence or make credibility determinations,

22  *Anderson*, 477 U.S. at 248.

23

24

1       When parties file cross-motions for summary judgment, as the parties have done here, each

2  motion "must be considered on its own merits." *Fair Hous. Council of Riverside County, Inc. v.*

3  *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The court must review the evidence submitted

4  in support of each cross-motion. *Id*. And, although the parties may each assert there are no

5  uncontested issues of material fact, the Court must determine whether disputed issues of material

6  fact are present. *Id*.; *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1148 (D. Idaho 2010).

7  **B.      Section 1983 Standard**

8       In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the

9  conduct complained of was committed by a person acting under color of state law and (2) the

10 conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws

11 of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds,*

12 *Daniels v. Williams*, 474 U.S. 327 (1986). The causation requirement of § 1983 is satisfied only

13 if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's

14 affirmative act, or omitted to perform an act which he or she was legally required to do that

15 caused the deprivation complained of. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355

16 (9th Cir. 1981).

17                          **IV.      DISCUSSION**

18       Defendant seeks summary judgment on all of Plaintiff's claims, including his First

19 Amendment and RLUIPA claims as well as the retaliation claim. Dkt. 26. Defendant argues he is

20 entitled to qualified immunity on these claims. *Id*. Defendant also asserts that Plaintiff is not

21 entitled to damages against Defendant in his official capacity, and that RLUIPA does not provide

22 a cause of action for damages against defendants sued individually. Dkt. 26; Dkt. 39. In his

23 Cross-Motion, Plaintiff seeks summary judgment in his favor on his claims. Dkt. 25.

24

**A.      First Amendment and RLUIPA Claims**

Defendant asserts that Plaintiff has not presented a valid claim under the First Amendment or RLUIPA because he has not demonstrated that Defendant substantially burdened his religious practice. Dkt. 26 at 11–12; 15–17. Upon review, the Court finds Plaintiff has established that the free exercise of his religious beliefs was substantially burdened. However, the Court concludes that Plaintiff has not satisfied the *Turner* reasonable relation test as it relates to his First Amendment claim. The Court also finds that Defendant's actions were supported by a compelling government interest as they relate to Plaintiff's RLUIPA claim.

1.      The First Amendment

Under the First Amendment, inmates retain the right to the free exercise of their religion, but this right is not absolute and must be balanced against the realities of incarceration and the legitimate needs of prison administration. Prison regulations or practices that intrude upon an inmate's free exercise rights are permissible so long as they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Implicit in the reasonably related standard is an understanding that lawful incarceration brings about necessary restrictions on certain constitutional rights due to the security, discipline, and operational concerns of prisons. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008). The standard also "ensures the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to resolution by decree." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349–50 (1987).

In evaluating a prisoner's First Amendment claim brought under 42 U.S.C. § 1983, the Court follows a two-step inquiry. First, the plaintiff must show that the challenged action or

policy substantially burdened his sincere religious beliefs. *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (internal citations and quotations omitted); *see also Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005).

If a plaintiff establishes a substantial burden, the Court then determines whether the challenged action or policy is reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89; *Shakur*, 514 F.3d at 883–84. In evaluating this relationship, courts consider four factors, which are often referred to as the *Turner* factors: (1) whether the challenged action or regulation has a valid, rational connection to a legitimate penological interest; (2) whether the plaintiff retains alternative means of exercising their religion; (3) the impact accommodating the religious practice would have on prison staff, other inmates, and institutional resources; and (4) the absence of ready alternatives that would fully accommodate the inmate's rights at *de minimis* cost to the institution. *Shakur*, 514 F.3d at 884 (citing *Turner,* 482 U.S. at 89–90). In considering the *Turner* factors, courts must afford deference to prison administrators' decisions balancing inmate rights with institutional needs. *See O'Lone*, 482 U.S. at 349; *Turner*, 482 U.S. at 89–90. Further, the burden of proof "is not on the State to prove the validity of prison regulations but on the plaintiff to disprove it" under the *Turner* factors. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

      a.    *Plaintiff has established a substantial burden on the exercise of his religious beliefs*

As an initial matter, the Court recognizes that this is not a case where an existing DOC policy prohibits an individual such as Plaintiff from wearing a Kufi at any time. *See Ajala v.*

1   *West*, 106 F. Supp. 3d 976, 981 (W.D. Wisc. 2015) ("If plaintiff's religious beliefs require him to

2   wear his kufi "at all times," then a rule that allows plaintiff to wear his kufi "most of the time"

3   imposes a substantial burden on his religious exercise because the rule requires him to "engage

4   in conduct that seriously violates his religious beliefs.") (quoting *Holt v. Hobbs*, 574 U.S. 352,

5   361 (2015));  *Ali v. Stephens*, 69 F. Supp. 3d 633, 643-44 (E.D. Tx. 2014) (substantial burden

6   imposed by rule prohibiting prisoners from wearing religious headgear throughout prison). In

7   fact, DOC Policy 560.200 states that, "[w]ith the exception of bandanas and fezzes, religious

8   head coverings may be worn at any time unless restricted for safety concerns." Dkt. 25 at 10, Ex.

9   C. Instead, this case centers on Defendant's early conduct, specifically his initial

10  misunderstanding of DOC policy with respect to whether an individual must possess a religious

11  items box in order to be issued a Kufi. *See* Dkt. 28 ¶ 15 ("At this time, it was my understanding

12  that an individual must have a religious items box to be issued a Kufi."). Operating under that

13  misunderstanding, Defendant informed Plaintiff that the Kufi was a religious item requiring

14  Plaintiff to have a religious items box. Dkt. 28-1 at 39. When Plaintiff responded that he had a

15  religious items box, Defendant requested that Plaintiff come to the property room the following

16  day with the box in order to retrieve the Kufi. Dkt. 28 ¶ 14. Plaintiff met with Defendant the next

17  day, but without a religious items box and, thus, based on Defendant's misunderstanding of DOC

18  policy at that time, Defendant did not issue the Kufi to Plaintiff. Dkt. 28 ¶ 15.

19      However, once Defendant received clarification from DOC Headquarters that, under

20  DOC policy, a Kufi does not require a religious items box, Defendant placed Plaintiff on the

21  callout to issue his Kufi. *Id*. While the record shows that Plaintiff did eventually receive his Kufi,

22  the events leading up to its issuance occurred over a span of thirty-one (31) days. *See* Dkt. 26 at

23  6. Plaintiff asserts that this 31-day delay "interfered with [his] ability to fulfill the religious

24

mandate of wearing a Kufi . . . and caused a significant disruption to [his] religious practice by preventing him from wearing his Kufi – a mandated religious practice." Dkt. 38 at 8, 9. Defendant does not dispute the 31-day delay, but argues that during this time he was assisting Plaintiff with his spiritual needs. Dkt. 26 at 11.

Drawing all reasonable inferences here in favor of Plaintiff, the Court finds a genuine dispute of material fact as to whether Defendant's misunderstanding of DOC policy and subsequent delay in issuing the Kufi imposed a "substantial burden on the exercise of [Plaintiff's] religious beliefs." *Warsoldier*, 418 F.3d at 994.

### b.    *Plaintiff has not satisfied the* Turner *test*

Because Plaintiff has established a substantial burden, the Court now examines Plaintiff's First Amendment claim under the *Turner* factors. Viewing the facts in a light most favorable to Plaintiff, the Court concludes all factors weigh in favor of summary judgment with respect to Defendant and his role in delaying the issuance of Plaintiff's Kufi.

The first *Turner* factor requires the Court to evaluate whether there was a legitimate penological interest that is rationally related to the policies on possession of personal property and religious items. *See Turner*, 482 U.S. at 89–90. Here, Defendant provides evidence of several DOC policies related to an incarcerated individual's rights with respect to exercising their religious beliefs. *See* Dkt. 28-1, Ex. 1; Dkt. 28-1, Ex. 2; Dkt. 25 at 1, Ex. C. As stated in DOC Policy 560.200, "The Department will provide religious as well as cultural opportunities for offenders within available resources, while maintaining facility security, safety, health, and orderly operations." Dkt. 28-1 at 3, Ex. 1. Further, as to religious head coverings, DOC Policy 560.200 states that, "[w]ith the exception of bandanas and fezzes, religious head coverings may be worn at any time unless otherwise restricted for safety concerns (e.g., while working with

machinery)." Dkt. 28-1 at 6, Ex. 1; Dkt. 25 at 10, Ex. C. These DOC policies rationally attempt to give priority to an incarcerated individual's right to "believe, express, and exercise the religion of their choice," Dkt. 28-1 at 3, while also maintaining the Department's penological interests in order, safety, and security of its facilities. Thus, the Court finds that the first *Turner* factor weighs in favor of Defendant.

Under the second *Turner* factor, the Court considers whether Plaintiff has "alternative means by which he can practice his religion" or is "denied all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 876–77 (9th Cir. 1993). It is undisputed that Plaintiff had other means of practicing his religion. For example, upon his request, Plaintiff was added to the open chapel religious programming. *See* Dkt. 28-1 at 42. Further, Defendant posits that, even though his misunderstanding of DOC policy led him to informing Plaintiff that he would issue the Kufi only when Plaintiff acquired the religious items box, if Plaintiff had in fact acquired that religious items box, Defendant would have issued the Kufi. Dkt. 26 at 13. This, Defendant argues, shows that, despite the misunderstanding, Plaintiff was still provided with an alternate means for practicing his religion. *Id*. Plaintiff has not countered this argument with any evidence that he was unable to exercise his religious beliefs due to the lack of his Kufi. Thus, the second *Turner* factor also weighs in favor of Defendant.

The third *Turner* factor considers the impact of the requested accommodation on prison staff, other inmates, and overall resources. *Turner*, 482 U.S. at 90. In support, Defendant first characterizes Plaintiff's request for accommodation as a desire to have his Kufi issued to him immediately on demand. Dkt. 26 at 14. Accommodating Plaintiff in this manner, Defendant contends, would be contrary to DOC policy regarding property distribution and possession. *Id*. More specifically, Defendant asserts, "Permitting this type of action[ ] would upend the

Department's personal and/or religious property system, would supplant state law giving the Department Secretary discretion on how property is distributed, would impose a significant burden on Department resources, and would seriously undermine prison safety for everyone involved." *Id*. In his filings, Plaintiff does not address the third *Turner* factor, nor does he dispute Defendant's argument with respect to the economic impact of accommodating Plaintiff. *See* Dkts. 8, 25, 38, 40. Upon review, the Court concludes the third *Turner* factor weighs in favor of Defendant.

The fourth and final *Turner* factor asks whether there are obvious, easy alternatives that would accommodate the inmate's religious exercise at a *de minimis* cost to the institution. *Turner*, 482 U.S. at 90–91. On this factor, "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating" a plaintiff's religious beliefs. *Id.* Rather, if a plaintiff can "point to an alternative that fully accommodates [their] rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the [challenged policy] does not satisfy the reasonable relationship standard." *Id.* at 91. As with the third *Turner* factor, in his filings, Plaintiff does not address this fourth *Turner* factor. *See* Dkts. 8, 25, 38, 40. Plaintiff has provided no other suggestions for ready alternatives that would achieve Defendant's legitimate penological interests while also accommodating Plaintiff's request. Thus, the Court finds that Plaintiff has not demonstrated that there are viable, ready alternatives to Defendant's current policies on possession of personal property and religious items. Therefore, the Court concludes the fourth *Turner* factor weighs in favor of Defendant.

Considering all four *Turner* factors, the Court finds that the DOC policies on possession of personal property and religious items have a reasonable connection to the legitimate penological goal of maintaining order, safety, and security. The Court also finds that Plaintiff has

alternatives for him to engage in his religious practice. Further, the Court finds that to allow

Plaintiff immediate issuance of property on demand and counter to DOC policy and procedures

would disrupt the current procedure, would impose a significant burden on Department

resources, and would seriously undermine prison safety for everyone involved. Finally, the Court

finds that Plaintiff has not shown there are any ready alternatives to Defendant's policies. For

these reasons and for those addressed above, the Court recommends **GRANTING** Defendant's

Motion for Summary Judgment (Dkt. 26) and **DENYING** Plaintiff's Motion for Summary

Judgment (Dkt. 25) with respect to Plaintiff's First Amendment claim.

    2.   <u>RLUIPA</u>

RLUIPA provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . unless the government demonstrates that imposition of the burden on that person—
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). To demonstrate a RLUIPA violation, a plaintiff "bears the initial

burden" of showing the challenged state action constitutes "a substantial burden on the exercise

of his religious beliefs." *Warsoldier*, 418 F.3d at 994.

As the Ninth Circuit explained in *Warsoldier*, to be considered a "substantial burden," the

challenged action "must impose a significantly great restriction or onus upon [religious]

exercise," such that it "intentionally puts significant pressure on inmates . . . to abandon their

religious beliefs." *Id.*, 418 F.3d at 995–96 (substantial burden test is same under First

Amendment free exercise clause and RLUIPA). Courts consider whether a challenged action

"denies an important benefit because of conduct mandated by religious belief, thereby putting

1    substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Hartmann*

2    *v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124–25 (9th Cir. 2013) (cleaned up). As with

3    claims brought under the First Amendment, a substantial burden requires "more than an

4    inconvenience on religious exercise." *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456

5    F.3d 978, 988 (9th Cir. 2006) (internal quotation marks omitted). If the plaintiff is unable to

6    demonstrate they suffered a substantial burden at the hand of any defendant, the inquiry ends,

7    and summary judgment is appropriate.

8        If, on the other hand, the plaintiff demonstrates a defendant imposed a substantial burden

9    on his religious exercise, the evidentiary burden shifts to the defendant, who must prove "any

10   substantial burden" on the "exercise of [the plaintiff's] religious beliefs is both [1] 'in

11   furtherance of a compelling governmental interest' and [2] the 'least restrictive means of

12   furthering that compelling governmental interest.'" *Warsoldier*, 418 F.3d at 995 (quoting 42

13   U.S.C. § 2000cc-1(a)). In this way, RLUIPA offers greater protection than the First Amendment,

14   as defendants, not plaintiffs, are required to show the substantial burden furthered a government

15   interest and was the least restrictive means of furthering that interest. *Id.*; *see also Overton v.*

16   *Bazzetta*, 539 U.S. 126, 132 (2003) (for claims brought under the First Amendment, the burden

17   "is not on the State to prove the validity of prison regulations but on the prisoner to disprove

18   it."). Even with these greater protections, the Supreme Court has not read RLUIPA as elevating

19   the "accommodation of religious observances over an institution's need to maintain order and

20   safety." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). Safety and security remain compelling

21   government interests, and courts owe deference to "institutional officials' expertise in this area."

22   *Id.* at 725 n.13.

23

24

1    Here, Defendant again argues Plaintiff has failed to establish that the free exercise of his

2  religious beliefs was substantially burdened by the delay in receiving his Kufi. *See* Dkt. 26 at 16.

3  However, as the Court has found a substantial burden above, the Court will now turn to whether

4  Defendant has proven that the substantial burden is in furtherance of a compelling government

5  interest and the least restrictive means of furthering that interest.

6    Defendant does argue that because Defendant's actions were supported by a compelling

7  government interest with no lesser restrictive alternatives, Plaintiff's RLUIPA claim should be

8  dismissed. Dkt. 26 at 16. In support, Defendant asserts that maintaining order and safety are the

9  compelling governmental interests in this case. *Id*. Plaintiff has not come forward with any

10 evidence to refute Defendant's contention here. Rather, he seemingly relies on Defendant's

11 eventual acknowledgment that a Kufi does not require a religious items box as evidence that the

12 delay in issuing the Kufi served no "legitimate penological interest." Dkt. 38 at 8.

13    While RLUIPA requires that an entity refusing, or in this case delaying, an accommodation

14 demonstrate its policy is the least restrictive means of furthering its alleged compelling interests,

15 prison officials are not required to refute every conceivable option to satisfy the least restrictive

16 means requirement, nor are they required to prove that they considered less restrictive alternatives

17 at a particular point in time, they need only refute alternatives offered by the prisoner. *Holt v.*

18 *Hobbs*, 574 U.S. 352, 371–72 (2015) (Sotomayor, J., concurring) (citing *United States v. Wilgus*,

19 638 F.3d 1274, 1289 (10th Cir. 2011)). The record demonstrates that Plaintiff was advised of the

20 available alternative to obtaining his Kufi by ordering a religious items box. *See* Dkt. 28 ¶ 13; Dkt.

21 28-1 at 39. Plaintiff then sent Defendant a number of messages in response, ranging from

22 questioning the need for a religious items box, accusing Defendant of not attending to his spiritual

23 needs, and eventually informing Defendant that he did in fact have a religious items box. *See* Dkt.

24

28 ¶ 14; Dkt. 28-1 at 39. Plaintiff then inquired with the Commissary as to the order number and date for his purchase of a religious items box. Dkt. 28-1 at 40. However, when he later arrived for a scheduled meeting with Defendant to presumably present the religious items box and process his request for the Kufi, Plaintiff did not have the box and so did not receive the Kufi. Dkt. 28 ¶¶ 14–15.

On the following day, Plaintiff sent Defendant a message asking to be added to open chapel religious programs, without mentioning the Kufi. Dkt. 28-1 at 42. Without a sufficient response from Plaintiff on this issue, by virtue of Plaintiff's subsequent request to be added to the open chapel religious programs, the Court is left to assume that Plaintiff deemed that potential alternative acceptable. Under RLUIPA, it was incumbent upon Plaintiff to offer alternatives that he did in fact deem acceptable. Plaintiff failed to do so here. As a result, the Court is satisfied that Defendant considered the most obvious least restrictive means for Plaintiff to practice his religion. Defendant was not required to do more in the absence of any additional input from Plaintiff on alternatives.

Because Defendant has satisfied his burden of showing, under RLUIPA, that Defendant's actions with respect to DOC policies on personal property and religious items further a compelling governmental interest with no lesser restrictive means, the Court recommends **GRANTING** Defendant's Motion for Summary Judgment (Dkt. 26) and **DENYING** Plaintiff's Motion for Summary Judgment (Dkt. 25) with respect to Plaintiff's RLUIPA claim.

**B.    Retaliation**

Plaintiff also claims that Defendant retaliated against him for asserting his rights with respect to the withholding of his Kufi. Dkt. 8. In his Motion, Defendant argues that Plaintiff's

conclusory allegations and self-serving statements do not establish retaliation on the part of Defendant. Dkt. 26 at 17–19. The Court agrees.

Within the prison context, a viable claim of First Amendment retaliation claim entails five basic elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Further, challenges to institutional restrictions that are asserted to inhibit First Amendment interests must also be analyzed in terms of the legitimate policies and goals of the corrections system. *Pell v. Procunier*, 417 U.S. 817 (1974).

Here, Plaintiff has a clearly established right to be free of retaliation for exercising his First Amendment rights. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). However, as explained below, the evidence before the Court does not support Plaintiff's claim that Defendant retaliated against him because he was exercising his First Amendment rights.

In order to prevail on a First Amendment retaliation claim, a plaintiff must initially show the protected conduct was a substantial or motivating factor in the defendant's decision. *Id*. (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). If the plaintiff makes this initial showing, the burden shifts to the defendant to establish that it would have reached the same decision even in the absence of the protected conduct. *Id.* To meet this burden, a defendant must show by a preponderance of the evidence that it would have reached the same decision; it is insufficient to show merely that it could have reached the same decision. *Id*. at 1315.

1      The free exercise of one's religious beliefs is protected conduct, yet there is no evidence

2   that Defendant took any adverse action against Plaintiff or that such action chilled Plaintiff's

3   activities. Plaintiff's claim that Defendant retaliated against Plaintiff because of his religious

4   beliefs by delaying the issuance of Plaintiff's Kufi is not supported. Dkt. 8. Defendant has

5   established that, at the time Plaintiff requested his Kufi in late May and early June 2021, it was

6   Defendant's understanding that DOC policy would not allow for the issuance of a Kufi unless

7   the individual had a religious items box. Dkt. 28 ¶ 15. Defendant informed Plaintiff of this

8   understanding when they met on June 9, 2021. *Id*. However, Defendant subsequently sought

9   clarification from DOC Headquarters on this issue and was informed that a Kufi does not in fact

10  require a religious items box. *Id*. Thus, only several days later, on June 14, 2021, the SCCC

11  Superintendent sent Plaintiff a message informing him that Defendant would be issuing the Kufi

12  to Plaintiff "sometime this week." Dkt 28 ¶ 16; Dkt. 28-1 at 47. Three days later, on June 17,

13  2021, Plaintiff was issued the Kufi. Dkt. 28 ¶ 18.

14     The record indicates that Defendant treated Plaintiff's personal property and religious

15  items based on his misapprehension of DOC policy. Immediately upon recognition of his

16  mistake, Defendant took action to issue the Kufi to Plaintiff in accordance with DOC policy.

17  Plaintiff has submitted no evidence—other than speculative and conclusory assertions—that

18  Defendant was motivated by anything other than applying the DOC's policies on personal

19  property and religious items. For example, in response to Defendant's Motion for Summary

20  Judgment, Plaintiff asserts that Defendant made "retaliatory threats and discriminatory remarks,"

21  and Defendant's "delay was deliberate, not incidental, and his refusal to seek clarification until

22  after [Plaintiff] escalated the issue reveals intent to obstruct [Plaintiff's] rights." Dkt. 38 at 9–10.

23

24

1      However, Plaintiff has submitted no evidence in support of such statements and

2  allegations. As such, Plaintiff has not shown that Defendant took some adverse action against

3  Plaintiff based on Plaintiff's exercise of his First Amendment rights. Further, Plaintiff has not

4  alleged facts showing his speech was chilled by any alleged action taken by Defendant. And

5  finally, Plaintiff has not proven that Defendant's conduct was anything other action taken in

6  accordance with DOC policy that advances legitimate penological interests. Therefore, Plaintiff

7  has failed to assert a claim of retaliation against Defendant.

8      Moreover, to the extent that Plaintiff claims that Defendant's treatment of his grievances

9  through the Kiosk messages constitutes retaliation for filing them in the first place, this claim

10  fails. The filing of prison grievances is protected conduct but, like above, there is no evidence

11  that Defendant took any adverse action against Plaintiff or that such action chilled Plaintiff's

12  activities.

13      In sum, Plaintiff's retaliation claim is conclusory and not supported by any evidence in

14  the record. Thus, the Court recommends Defendant's Motion for Summary Judgment (Dkt. 26)

15  as to this claim be **GRANTED** and that Plaintiff's Motion for Summary Judgment (Dkt. 25) be

16  **DENIED**.

17  **C.    Qualified Immunity**

18      Defendant asserts qualified immunity for all claims for damages in this matter. Dkt. 26.

19  Although the Court finds above that Plaintiff has failed to establish violations of the First

20  Amendment and RLUIPA, because the Court determined that the delay in receiving his Kufi did

21  substantially burden the practice of Plaintiff's religion, the Court will nevertheless address

22  qualified immunity. Upon review, the Court finds that Defendant is entitled to qualified

23  immunity.

24

1    Under the qualified immunity doctrine, "government officials performing discretionary

2  functions generally are shielded from liability for civil damages insofar as their conduct does not

3  violate clearly established statutory or constitutional rights of which a reasonable person would

4  have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A two-part test resolves claims of

5  qualified immunity by determining whether a plaintiff has alleged facts that "make out a

6  violation of a constitutional right," and if so, whether the "right at issue was 'clearly established'

7  at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

8  The Court may address the parts in either order. *Id.* at 236.

9    Further, qualified immunity protects officials "who act in ways they reasonably believe to

10  be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011). "The

11  reasonableness inquiry is objective, evaluating 'whether the officers' actions are "objectively

12  reasonable" in light of the facts and circumstances confronting them, without regard to their

13  underlying intent or motivation.'" *Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir.

14  2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Even if the officer's decision is

15  constitutionally deficient, qualified immunity shields him from suit if his misapprehension about

16  the law applicable to the circumstances was objectively reasonable. *See Brosseau v. Haugen*, 543

17  U.S. 194, 198 (2004). To that end, the purpose of qualified immunity is "to recognize that

18  holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make

19  difficult decisions in challenging situations, thus disrupting the effective performance of their

20  public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).

21    The salient question is whether the state of the law at the time gives officials "fair

22  warning" that the conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 740 (2002).

23

24

1    Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly

2    incompetent." *Hunter v. Bryant*, 502 U.S. 224 (1991).

3        Here, there is no question that the First Amendment guaranteeing prisoners the right to

4    free exercise of their religion is clearly established. *Cruz v. Beto*, 405 U.S. 319, 323 (1972).

5    However, the United States Supreme Court has made clear that the test of "clearly established

6    law" is not to be applied at this level of generality for the purpose of a qualified immunity

7    analysis. Rather, the inquiry whether a right was clearly established "must be undertaken in light

8    of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

9    In order for a right to be clearly established, "[t]he contours of the right" must be sufficiently

10   clear that a reasonable official would understand that his conduct violates that right. *Anderson v.*

11   *Creighton*, 483 U.S. 635, 640 (1987).

12       The Court has already addressed the first element of qualified immunity analysis: because

13   the delay in issuing Plaintiff's Kufi imposed a substantial burden on his religious exercise,

14   Plaintiff's rights under the First Amendment and RLUIPA would have been violated on the facts

15   alleged with respect to substantial burden. The next issue is whether it would have been clear to a

16   reasonable official that the delay was unlawful in the situation he confronted.

17       The Court concludes Defendant is entitled to qualified immunity. The record shows that

18   Defendant believed he was following DOC policy with respect to Plaintiff's Kufi. When Plaintiff

19   arrived at SCCC, the property unit there confiscated his Kufi. Dkt. 28 ¶ 6. Through Kiosk

20   messages, Plaintiff made Defendant aware that the property unit had his Kufi "but they refusing

21   to give to you whereas anything religious related is not their concern." Dkt. 28 ¶ 12; Dkt. 28-1 at

22   37. Defendant's response to this message shows that Defendant believed Plaintiff's Kufi was a

23   religious item requiring a religious items box. Dkt. 28 ¶ 13l Dkt. 28-1 at 38 ("So in order to have

24

religious items you need a religious items box first. You do not have one on your matrix, in order

for me to get your Kufi to issue to you, you will need to order a religious items box off of store.

Let property know when you get one and then they can give me your Kufi."). As such, pursuant

to DOC policies on personal property and religious items, Defendant informed Plaintiff that

religious items must be stored in an approved religious items box. *See* Dkt. 28 ¶ 13; Dkt. 28-1 at

39 ("DOC Policy 560.200 requires you to have a religious items box to store religious items in.

If you have the box with a receipt just provide it to Property if you do not order one. It's that

simple.").

Evidence shows that Defendant believed he was following DOC policy, and it was only

after consulting with DOC Headquarters that he understood a Kufi does not require a religious

items box. Dkt. 28 ¶ 15. It is important to note that Defendant's mistaken belief was temporary.

Immediately after Defendant received clarification, and the SCCC Superintendent informed

Plaintiff that Defendant would be issuing the Kufi that week, Plaintiff was issued his Kufi three

days later. Dkt. 28 ¶ 16; Dkt. 28-1 at 46; Dkt. 28 ¶ 18.

Later, when Plaintiff filed a grievance through the DOC's Resolution Program, it was

determined that Defendant's actions were in accordance with DOC policies, that he got

clarification as to possession of religious headwear, and that his actions were without malice.

Dkt. 27-1 at 9–15. In light of these facts, it cannot be said that Defendant's actions were intended

to cause a constitutional violation. And, even though Defendant's misunderstanding of the DOC

policies applicable to these circumstances caused the delay, Defendant's reliance upon DOC

policies was nonetheless objectively reasonable. *See Brousseau*, 543 U.S. at 198. Defendant had

no reason to believe that the DOC policies, which at all times preserved Plaintiff's right to

possess personal property and religious items and to practice his religion, were unconstitutional.

1    To be clear, the DOC policies are not obviously unconstitutional, and there is no evidence

2    demonstrating Defendant's misapprehension of the policies was unreasonable or

3    unconstitutional. Thus, Defendant is entitled to qualified immunity for all claims for damages.

4    **D.    Plaintiff is Not Entitled to Damages**

5          1.    <u>Claims for Damages Against Defendant in His Official Capacity</u>

6          When a claim is brought against a state employee in their official capacity, the real party

7    in interest for that claim is the government entity for which they work, not the individual

8    named. In other words, "a suit against a state official in his official capacity is no different from a

9    suit against the State itself." *Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir.

10   1997) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). However, States are

11   not "persons" that can be sued under § 1983. *Doe*, 131 F.3d at 839. As a result, a plaintiff

12   generally cannot sue state employees in their official capacity under § 1983.

13         Further, RLUIPA permits injunctive relief but does not allow for recovery of monetary

14   damages against state officials in their official capacity. *See Sossamon v. Texas*, 563 U.S. 277,

15   288 (2011) (RLUIPA does not provide for claim for monetary damages against the state or state

16   officials sued in their official capacity); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1114 (9th

17   Cir. 2010) ("The Eleventh Amendment bars [the plaintiff's] suit for official-capacity damages

18   under RLUIPA.").

19         Here, in his Complaint, Plaintiff seeks monetary damages for his claims against

20   Defendant in his individual and official capacity. *See* Dkt. 8 at 7. Plaintiff cannot recover such

21   damages from Defendant in his official capacity because Defendant is a state employee. Thus,

22   Plaintiff's claims for damages against Defendant in his official capacity must be dismissed.

23   Accordingly, the Court recommends Defendant's Motion for Summary Judgment (Dkt. 26) be

24

**GRANTED** with respect to Plaintiff's official-capacity claims, and that Plaintiff's Motion for Summary Judgment (Dkt. 25) be **DENIED**.

      2.    <u>Claims for Damages under RLUIPA Against Defendant in His Individual Capacity</u>

Defendant also argues RLUIPA does not provide a cause of action for damages against state officials in their individual capacities. Dkt. 26 at 17. The Court agrees.

Even if Plaintiff made the requisite showing of a substantial burden for his RLUIPA claim, Defendant sued in his individual capacity is entitled to summary judgment for a different reason: only federal funding recipients may be held liable for damages under RLUIPA. The Ninth Circuit recently confirmed that an entire category of defendants may not be sued for damages under RLUIPA, specifically individual state and local officials. *See Fuqua v. Raak*, 120 F.4th 1346, 1359 (9th Cir. 2024) (citing *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014)) ("[O]ur decision in *Wood* rested squarely, at least in part, on the constitutional holding that the Spending Clause does not allow Congress to impose individual damages liability on state or local officials who are not themselves the recipients of federal funds.").

For this additional reason, the Court concludes Defendant sued in his individual capacity under RLUIPA is entitled to summary judgment. Accordingly, the Court recommends Defendant's Motion for Summary Judgment (Dkt. 26) be **GRANTED** with respect to Plaintiff's claims for damages under RLUIPA and against Defendant individually, and Plaintiff's Motion for Summary Judgment (Dkt. 25) be **DENIED**.

## V.    CONCLUSION

Based on the foregoing discussion, Plaintiff has failed to establish that his right to free exercise of religion was violated under the First Amendment and RLUIPA, or that he was retaliated against in violation of the First Amendment. The Court also concludes that Defendant

is entitled to qualified immunity against all of Plaintiff's claims. Also, Plaintiff is not entitled to damages against Defendant in his official capacity, or under RLUIPA against Defendant individually. Accordingly, the Court recommends that Defendant's Motion for Summary Judgment (Dkt. 26) be **GRANTED** and Plaintiff's Motion for Summary Judgment (Dkt. 25) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **March 18, 2025**, as noted in the caption.

Dated this 4th day of March, 2025.

Grady J. Leupold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 30